#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| HIPPOCRATIC GROWTH MARYLAND PROCESSING, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL PESCE,<br><br>    Defendant. | Civil Action No. 22-cv-00090-LKG<br><br>Dated:  October 6, 2022 |

### MEMORANDUM OPINION AND ORDER

**I.  INTRODUCTION**

In this breach of contract action, plaintiff, Hippocratic Growth Maryland Processing, LLC ("Hippocratic"), alleges that defendant, Michael Pesce, breached a Stock Purchase Agreement that would have allowed Hippocratic to manage a Maryland medical cannabis processor.  *See generally* Compl., ECF No. 6.  Defendant has moved to dismiss this action, or alternatively, for summary judgment in his favor, pursuant to Fed. R. Civ. P. 12(b)(6) and 56.  *See generally* Def. Mot, ECF No. 28.  This motion is fully briefed.  *See id*.; Pl. Resp., ECF No. 31; Def. Reply, ECF No. 32.  No hearing is necessary to resolve the motion.  *See* L.R. 105.6 (D. Md. 2021).  For the reasons that follow, the Court **DENIES** Mr. Pesce's motion.

**II.  FACTUAL AND PROCEDURAL BACKGROUND**[1]

    **A.  Factual Background**

In this breach of contract action, Hippocratic alleges that Michael Pesce breached a Stock

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl."), defendant's motion to dismiss, or, in the alternative, for summary judgment ("Def. Mot.") and memorandum in support thereof ("Def. Mem."), and plaintiff's response in opposition thereto ("Pl. Resp.").  Unless stated otherwise, the facts contained herein are undisputed.

Purchase Agreement (the "SPA") pursuant to which Hippocratic acquired 90 percent of the shares of TC Maryland, Inc. ("TC Maryland") and the ability to manage Pro Green Medical, LLC ("Pro Green"), a pre-approved Maryland medical cannabis processor. *See* Compl. at ¶¶ 8, 11; *see also* Compl. Ex. A (the SPA). Specifically, Hippocratic alleges that Mr. Pesce breached the SPA by refusing to communicate with the Maryland Medical Cannabis Commission (the "MMCC") about an application to transfer the management of Pro Green to Hippocratic. *See* Compl. at ¶ 28. As relief, Hippocratic seeks certain injunctive relief, specific performance and to recover monetary damages from Mr. Pesce. *See id.* at ¶ 33.

## The SPA

As background, Hippocratic is a Maryland limited liability company formed for the purpose of managing a medical cannabis processing facility. *Id*. at ¶ 6. Michael Pesce is the owner of TC Maryland, and he also serves as the LLC Manager of Pro Green. *Id.* at ¶ 7-8.

On February 18, 2021, Hippocratic, Mr. Pesce, and TC Maryland executed the SPA, pursuant to which Hippocratic acquired 90 percent of the shares of TC Maryland. *Id*. at ¶ 7. At the time of this transaction, TC Maryland held an option to purchase 100 percent of the membership interests in Pro Green, an entity that had been awarded pre-approval to operate as a medical cannabis processor in Maryland.[2] Def. Mem. at 2.

Central to the parties' agreement was their plan to transfer the management of Pro Green to Hippocratic. To that end, Hippocratic agreed to pay Mr. Pesce $5,400,000.00, to provide additional funding to build out Pro Green, and to provide a revolving line of credit for Pro Green's operating expenses. *See* Compl. at ¶ 11; *see also* Compl. Ex. A at A.003, A.0013.

Relevant to the pending dispositive motion, Article VIII of the SPA addresses termination of this agreement and Section 7.01 of the SPA provides that:

---

[2] Medical cannabis processors extract active compounds of usable cannabis from cannabis plants and process manufactured products such as tinctures, oils, and concentrated THC products for sale to medical cannabis patients in Maryland. Compl. at ¶ 9.

2

## ARTICLE VII

## TERMINATION

**Section 7.01 Notice of Default and Period to Cure.** The Parties shall each devote all necessary time, attention and resources (financial or otherwise) to ensure that the Company obtains the MMCC Final Approval and Dispensary License by fulfilling their post-closing covenants and obligations.

(a) If the Owner fails to satisfy (i) all post-closing covenants in Section 5.06 of this Agreement, or (ii) any other obligations under this Agreement and the Transaction Documents, Purchaser shall provide a written notice detailing the breach and requesting a meeting or conference call with the Owner for an explanation as to why the covenants and obligations have not been timely satisfied and how the Owner plans to fulfill his covenants and obligations within seven (7) Business Days after the meeting ("**Owner Cure Period**"). The meeting or conference call shall be scheduled within no more than two (2) business days after the notice.

(b) If the Purchaser fails to satisfy all post-closing covenants in Sections 5.01, 5.02, 5.03, 5.04 and 5.05 and all other obligations under this Agreement and the Transaction Documents, the Owner shall provide written notice detailing the breach and requesting a meeting or conference call with the Purchaser for an explanation as to why the covenants and obligations have not been timely satisfied and how the Purchaser plans to fulfill all of its covenants and obligations within seven (7) Business Days after the meeting **("Purchaser Cure Period")**. The meeting or conference call shall be scheduled within no more than two (2) Business Days after the notice.

*Id.* at A.019-020 (emphasis in original). It is undisputed that Hippocratic did not provide the notice described in Section 7.01(a) before it commenced this litigation. *See* Def. Mem. at 7; Pl. Resp. at 3.

Sections 7.02 and 7.03 of the SPA further provide that:

**Section 7.02 Termination of Agreement.** At any time prior to the MMCC Final Approval and upon written notice to the other Party, this Agreement may be terminated as follows:

(a) if, seven (7) Business Days after the expiration of the Owner Cure Period under 7.01(a), the Owner has not cured his breach of the post-

3

    closing covenants in this Agreement, the Purchaser may terminate this Agreement;
(b) if, seven (7) Business Days after the expiration of the Purchaser Cure Period under 7.01(b), Purchaser has not cured its breach of the post-closing covenants in this Agreement, Seller Representative may terminate this Agreement;
(c) by the mutual written consent of the Owner and Purchaser;
(d) by Owner and Purchaser if there shall be any Law that makes consummation of the transactions contemplated by this Agreement illegal or otherwise prohibited; and
(e) by Owner or Purchaser if any Governmental Body shall have issued a Governmental Order restraining or enjoining the transactions contemplated by this Agreement, and such Governmental Body shall have become final and non-appealable.

**Section 7.03 Effect of Termination.**

(a) The Parties' termination rights under Section 7.02 are in addition to their rights under this Agreement or otherwise, and the exercise of any termination right will not be an election of remedies.
(b) Nothing herein shall relieve any Party hereto from liability for any intentional breach of any provision hereof.

*Id.* at A.020.

Lastly, Section 8.13 of the SPA addresses specific performance and provides that:

**Section 8.13 Specific Performance**. The Parties agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed by them in accordance with the terms hereof or were otherwise breached and that each party hereto shall be entitled to an injunction or injunctions, specific performance and other equitable relief to prevent breaches of the provisions hereof and to enforce specifically the terms and provisions hereof, without the proof of actual damages, in addition to any other remedy to which they are entitled at law or in equity. Each party agrees to waive any requirement for the security or posting of any bond in connection with any such equitable remedy, and agrees that it will not oppose the granting of an injunction, specific performance or other equitable relief on the basis that (a) the other party has an adequate remedy at law, or (b) an award of specific performance is not an appropriate remedy for any reason at law or equity[.]

*Id.* at A.023.

4

### The Application For Transfer

The Maryland Medical Cannabis Commission must provide prior approval for the transfer of management control and ownership for any licensed cannabis company. *See* Md. Code Ann., Health-Gen. § 13-3309 (stating requirements for licensure of medical cannabis processors). And so, on March 16, 2021, Michael Pesce submitted an application for the transfer of management control of Pro Green to the MMCC. *See* Compl. at ¶ 14.

The effort to transfer the management of Pro Green to Hippocratic was short-lived. On December 27, 2021, Mr. Pesce sent a notice of default to Hippocratic that alleged multiple breaches of the SPA by Hippocratic.[3] *Id*. at ¶ 17. Thereafter, the parties unsuccessfully attempted to resolve this dispute. *Id.* at ¶¶ 17-20.

### The Withdrawal Of Application For Transfer

On January 11, 2022, the MMCC informed Hippocratic that Michael Pesce told the Commission that Pro Green no longer intended to transfer control of its management to Hippocratic. *Id*. at ¶ 21; *see also* Pl. Resp. Ex. A. And so, the MMCC advised Hippocratic that the proposed management agreement would not be considered further, because the licensee had rescinded the request to transfer control. Compl. at ¶ 21. On January 24, 2022, Mr. Pesce sent a Notice of Termination of the SPA to Hippocratic. *See* Pl. Resp. Ex. D at ¶ 20.

Hippocratic contends that, by rescinding the application for the transfer of management of Pro Green, Mr. Pesce violated his obligation under the SPA to take all acts reasonably necessary to "give effect to the transactions contemplated." Compl. at ¶¶ 25-26.

**B.     Procedural Background**

Hippocratic initially commenced this action in the Circuit Court for Baltimore County on January 11, 2022. *See* Not. of Removal at 1, ECF No. 1. On January 13, 2022, Michael Pesce removed the case to this Court. *See generally id.*

---

[3] In his notice, Michael Pesce stated that Hippocratic was in default under Sections 5.02-5.05 of the SPA and that he requested a conference call with Hippocratic pursuant to Section 7.01 of the SPA. Compl. at ¶ 17; Compl. Ex. D.

5

On April 8, 2022, Mr. Pesce filed a motion to dismiss, or, alternatively, for summary judgment, pursuant to Fed. R. Civ. P. 12(b)(6) and 56, and a memorandum in support thereof. *See* Def. Mot.; Def. Mem.  On April 29, 2022, Hippocratic filed a response in opposition to this motion.  *See* Pl. Resp.  On May 13, 2022, Mr. Pesce filed a reply brief in support of his motion. *See* Def. Reply.

Defendant's motion to dismiss, or, alternatively, for summary judgment, having been fully briefed, the Court resolves the pending motion.

### III. LEGAL STANDARDS

#### A. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted).  But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet*, 591 F.3d at 255.  And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Priv. Placement Partners II, L.P. v. Parker,* 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989)).

#### B. Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477

6

U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied,* 507 U.S. 972 (1993). But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

    **C.**    **Breach Of Contract Claims**

Lastly, in Maryland, the elements of a breach of contract claim include: (1) a contractual obligation and (2) a material breach of that obligation. *Allstate Ins. Co. v. Warns*, No. 11-1846, 2012 WL 681792, at *10 (D. Md. Feb. 29, 2012) (citations omitted). And so, a plaintiff must plead the existence of a "contractual obligation, breach, and damages" to state a plausible breach

7

of contract claim.  *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co*., No. 16-3431, 2018 WL 1471682, at *8 (D. Md. Mar. 23, 2018) (citations omitted).

Where the language of a contract is unambiguous, the Court construes the contract based upon its plain language.  *See Sprint Nextel Corp. v. Wireless Buybacks Holdings, LLC*, 938 F.3d 113, 126 (4th Cir. 2019) (citations omitted) ("[T]he court must first look to the written language of the contract to determine whether it is 'susceptible of a clear, unambiguous, and definite understanding.' . . . If the contract is unambiguous, then the court construes it as a matter of law.").  But, a contract may be ambiguous when "a reasonably prudent person" finds it "susceptible of more than one meaning." *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 885 F.3d 271, 277 (4th Cir. 2018) (quoting *Nova Rsch., Inc. v. Penske Truck Leasing Co.*, 952 A.2d 275, 283 (Md. 2008)).  In determining whether a contract is ambiguous, "courts should focus on 'the entire language of the agreement, not merely a portion thereof.'"  *Id.*  Maryland courts give effect to every clause and phrase in a contract.  *See Owens-Illinois, Inc. v. Cook*, 872 A.2d 969, 986 (Md. 2005); *see also Spring Nextel Corp.*, 938 F.3d at 126 (citations omitted) ("[T]he court must consider the contract 'in its entirety and . . . effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing . . .'").

In addition, the Court seeks to determine the intention of the parties when interpreting a contract.  *See Janusz v. Gilliam*, 947 A.2d 560, 569 (Md. 2008).  Given this, it is the intention of the parties that controls the analysis.  *See Ford v. Antwerpen Motorcars Ltd.*, 117 A.3d 21, 25 (Md. 2015) (citations omitted).  And so, courts must examine "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." *Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank, N.A.*, 929 A.2d 932, 952 (Md. 2007) (citations omitted).

### IV.   LEGAL ANALYSIS

Michael Pesce has moved to dismiss this matter, or, alternatively, for summary judgment in his favor, upon the ground that Hippocratic failed to satisfy the notice and cure procedures set forth in Section 7.01 of the SPA before commencing this action.  *See generally* Def. Mem. Hippocratic counters that Mr. Pesce's motion is untimely and that dismissal of this action is also not warranted, because the notice and cure procedures set forth in Section 7.01 of the SPA are not conditions precedent to bringing its breach of contract claim and the complaint sufficiently

alleges a breach of contract claim against Mr. Pesce. *See generally* Pl. Resp. Hippocratic also argues that summary judgment is not appropriate, because there are material facts in dispute regarding Mr. Pesce's decision to terminate the SPA. *Id.* at 9-10. And so, Hippocratic requests that the Court deny Mr. Pesce's motion. *Id.* at 10.

For the reasons that follow, Mr. Pesce's dispositive motion is timely under the Court's Scheduling Order. A careful review of the SPA and the undisputed material facts of this case also show that the notice and cure procedures under Section 7.01 of the SPA apply to Hippocratic's breach of contract claim. But, the application of these procedures would be futile in this case, because Mr. Pesce has terminated the SPA. And so, the Court **DENIES** Mr. Pesce's motion.

### A.     Defendant's Motion Is Timely

As an initial matter, Hippocratic argues without persuasion that Michael Pesce's motion is untimely. *See* Pl. Resp. at 8. On March 21, 2022, the Court issued a Scheduling Order that, among other things, granted Mr. Pesce leave to file his dispositive motion on or before April 8, 2022. *See* ECF No. 24. Thereafter, Mr. Pesce timely filed the subject motion on April 8, 2022. *See* Def. Mot; Def. Mem. And so, Hippocratic's argument that the Court should deny this motion as untimely lacks merit.

### B.     Section 7.01 Of The SPA Applies To Hippocratic's Claim

Turning to the merits of the pending motion, a careful reading of the SPA shows that the notice and cure procedures in Section 7.01 of the agreement apply to Hippocratic's breach of contract claim. Section 7.01 provides, in relevant part:

> **Section 7.01 Notice of Default and Period to Cure.** The Parties shall each devote all necessary time, attention and resources (financial or otherwise) to ensure that the Company obtains the MMCC Final Approval and Dispensary License by fulfilling their post-closing covenants and obligations.
>
> (a) If the Owner fails to satisfy (i) all post-closing covenants in Section 5.06 of this Agreement, or (ii) any other obligations under this Agreement and the Transaction Documents, Purchaser shall provide a written notice detailing the breach and requesting a meeting or conference call with the Owner for an explanation as to why the covenants and obligations have

9

> not been timely satisfied and how the Owner plans to fulfill his covenants and obligations within seven (7) Business Days after the meeting ("**Owner Cure Period**").  The meeting or conference call shall be scheduled within no more than two (2) business days after the notice[.]

Compl. Ex. A at A.019 (emphasis in original).

The Court reads this provision to require that Hippocratic provide a written notice to Mr. Pesce, detailing any default of the post-closing covenants and/or any other obligations under the SPA, before commencing this litigation.  Indeed, the plain language of Section 7.01(a) makes clear that, "[i]f [Mr. Pesce] fails to satisfy (i) all post-closing covenants . . . , or (ii) any other obligations under this Agreement . . . , [Hippocratic] shall provide a written notice detailing the breach and requesting a meeting or conference call with [Mr. Pesce]." *Id*.  Hippocratic alleges in this case that, by rescinding the application for the transfer of management of Pro Green, Mr. Pesce violated his obligation under the SPA to take all acts reasonably necessary to "give effect to the transactions contemplated."  Compl. at ¶¶ 25-26.  And so, Section 7.01 is applicable to its claims.  *See Sprint Nextel Corp. v. Wireless Buybacks Holdings, LLC*, 938 F.3d 113, 126 (4th Cir. 2019) ("[T]he court must first look to the written language of the contract to determine whether it is 'susceptible of a clear, unambiguous and definite understanding.' . . . If the contract is unambiguous, then the court construes it as a matter of law.").

Hippocratic's argument that Section 7.01 does not apply to its claims, because the notice and cure procedures in this provision apply only to termination of the SPA, is also belied by the text of the SPA.  As discussed above, Section 7.01 states that the notice and cure procedures described therein apply to a failure to satisfy "all post-closing covenants" and "*any other obligations*" under the SPA.  Compl. Ex. A at A.019 (emphasis added).  Section 7.01(a)'s reference to "*any other obligations*" in this provision demonstrates that the parties intended the notice and cure procedures apply to a broad range of potential defaults under that agreement.

The Court's reading of Section 7.01 to apply to circumstances other than the termination of the SPA is also reinforced by a reading of the other provisions found in Article VII of the SPA.  In this regard, Section 7.02 of the SPA specifically addresses the notice and cure period required before either party may terminate the SPA.  Notably, Section 7.02 is titled "Termination of Agreement" and this provision provides, in relevant part, that: "if, seven (7) Business days

10

*after the expiration of the Owner Cure Period under 7.01(a)*, [Mr. Pesce] has not cured his breach of the post-closing covenants in this Agreement, [Hippocratic] may *terminate* this Agreement." Compl. Ex. A at A.020 (emphasis added). And so, an additional notice and cure period is provided for termination of the SPA. *See id.*

Section 7.03 of the SPA further provides that, "[t]he Parties' termination rights under Section 7.02 are in addition to their rights under this Agreement." *Id*. Given this, the plain language of these two provisions shows that the notice and cure procedure that applies under Section 7.02 of the SPA is separate and distinct from the notice and cure procedures required under Section 7.01(a) of the SPA.

Indeed, the notice and cure procedure set forth in Section 7.02 would lack meaning if the procedures under Section 7.01 were limited to the termination of the SPA, as Hippocratic suggests. *See* Pl. Resp. at 6-7. Given this, when read as a whole, the SPA clearly requires that Hippocratic provide Mr. Pesce with written notice of any default of his obligations under the SPA and an opportunity to cure such default before bringing its breach of contract claim.

   **C.**  **Dismissal Of This Action Is Not Appropriate**

Having determined that Section 7.01 applies to Hippocratic's breach of contract claim, the Court observes that it is undisputed that Hippocratic did not provide the notice and opportunity to cure required under Section 7.01(a) before commencing this litigation. *See* Def. Mem. at 7; Pl. Resp. at 3. Nonetheless, the Court is not persuaded that dismissal of this action is appropriate, given the specific circumstances of this case.

In this regard, it is undisputed that Michael Pesce sent a Notice of Termination of the SPA to Hippocratic on January 24, 2022, shortly after Hippocratic commenced this litigation. *See* Pl. Resp. Ex. D. at ¶ 20; *see generally* Def. Mem. Ex. #3 at 6. Given this, there can be no genuine dispute that Mr. Pesce neither intends to cure any alleged default of his obligations under the SPA, nor to continue to with that agreement.[4] And so, a requirement that Hippocratic

---

[4] Mr. Pesce relies upon *Clark v. Bank of Am., N.A.*, 561 F. Supp. 3d 542 (D. Md. 2021), and *Richards v. NewRez LLC*, No. CV ELH-20-1282, 2021 WL 1060286, at *21 (D. Md. Mar. 18, 2021), to argue for the summary dismissal of Hippocratic's claim. *See* Def. Mem. at 8-9. But, these cases are distinguishable from this matter, because Mr. Pesce has terminated the SPA since this litigation began. *See* Pl. Resp. Ex. D at ¶ 20.

11

provide Mr. Pesce with notice and an opportunity to cure under Section 7.01(a), before it pursues its breach of contract claim, would be futile. For these reasons, the Court declines to dismiss the complaint. *See Recreonics Corp. v. Aqua Pools, Inc.*, 638 F. Supp. 754, 758 (D.S.C. 1986) (holding that, where a defendant terminates a contract and announces its intention not to perform, the defendant preempts the fulfillment of the condition precedent).

## V.   CONCLUSION

In sum, Michael Pesce's dispositive motion is timely. A careful review of the SPA and the undisputed material facts of this case also show that the notice and cure procedures under Section 7.01 of the SPA apply to Hippocratic's breach of contract claim. But, the application of these procedures would be futile, because Mr. Pesce has terminated the SPA.

And so, for the foregoing reasons, the Court:

1. **DENIES** Mr. Pesce's motion to dismiss, or, alternatively, for summary judgment (ECF No. 28); and

2. **DIRECTS** Mr. Pesce to **ANSWER,** or otherwise respond to the complaint, on or before **November 7, 2022**.

Judgment is entered accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby<br>
LYDIA KAY GRIGGSBY<br>
United States District Judge